**Victor SCHAFFER et al., Appellants,**
**v.**
**UNIVERSAL RUNDLE CORPORATION,**
**Appellee.**

**UNIVERSAL RUNDLE CORPORATION,**
**Appellant,**
**v.**
**Victor SCHAFFER et al., Appellees.**
**No. 25034.**

United States Court of Appeals
Fifth Circuit.

June 27, 1968.

Rehearing Denied Aug. 12, 1968.

894

Jim Ammerman, Franklin Jones, Jr., Franklin Jones, Sr., Marshall, Tex.. Jones, Jones & Baldwin, Marshall, Tex., for appellants.

Tom B. Ramey, Jr., Tyler, Tex., Burton Y. Weitzenfeld, James R. Fruchterman, Chicago, Ill., Ramey, Brelsford, Flock & Devereux, Tyler, Tex., Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., of counsel, for appellee.

Before RIVES, BELL and GOLDBERG, Circuit Judges.

RIVES, Circuit Judge:

Victor Schaffer and Mechanical Wholesale, Inc. sued Universal Rundle Corporation seeking damages for an alleged breach of contract and treble damages and attorneys' fees[1] for violations of the Sherman Act[2] and of the Robinson-Patman Act.[3] After a full trial, the jury returned the following verdict:

"We, the Jury, find for the Plaintiffs and against the Defendant and assess damages in the sum of Seventy Thousand Dollars.

"1.

"Did the Defendant conspire with Universal-Southwest, Inc. to restrain the trade of the Plaintiffs by means of seeking to induce Porter Plumbing & Heating of Austin, Texas, to withdraw the purchase order of February 2, 1965, from the Plaintiffs and place it with Universal-Southwest, Inc.?

"ANSWER 'YES' OR 'NO'

"ANSWER: YES

"2.

"Did the Defendant discriminate in favor of Universal-Southwest, Inc. over the Plaintiffs by refusing to

1. Provided by 15 U.S.C. § 15.

2. 15 U.S.C. § 1.

3. 15 U.S.C. § 13.

execute the warranty on the purchase order of February 2, 1965 with Mechanical Wholesale, Inc. as the contractor, but offering to execute the same if the purchase order should be given to said Universal-Southwest, Inc.?

"ANSWER 'YES' OR 'NO'

"ANSWER: YES

"Oct. 28, 1966

"Date

/s/ J. P. GARRETT

Foreman"

Upon that verdict, the court entered judgment for the plaintiffs in the sum of $70,000.00 and costs, but declined to enter judgment for treble damages and attorneys' fees upon a finding "that the plaintiffs did not discharge their burden in proving that the defendant discriminated against the plaintiffs in violation of the Robinson-Patman Act, and or to have conspired with others in restraint of trade in violation of the Sherman Antitrust Act." All parties appeal.[4]

Rundle is a manufacturer of plumbing fixtures. Schaffer is the sole stockholder of Mechanical, which opened in Austin, Texas, on November 2, 1964, a wholesale plumbing supply business. Mechanical became a distributor for Rundle, as well as for other manufacturers.

In mid-November 1964, a few weeks after Mechanical's opening, Rundle approached Mechanical regarding a government construction project at Fort Hood, Texas, consisting of the construction of some ten enlisted men's barracks and other buildings.

W. S. Bellows Construction Company had received the general contract for that job. Rundle, through Elmer Harber, its Regional Sales Manager, and Ralph Wallace, a sales representative, suggested to Schaffer that Mechanical submit a bid on the plumbing fixtures and accessories for that job to Porter Plumbing & Heating Co., a prospective mechanical contractor. When Schaffer hesitated, due to the size of the job, and the short time involved, Harber provided a "take-off"[5] already prepared by Rundle's Dallas wholesale distributor, who had abandoned attempts to get the job, and by a Dallas employee of Rundle.

The equipment required for the job included plumbing fixtures and accessories. Rundle neither manufactures nor sells the latter, which comprised about half of the total amount involved monetarily. Schaffer obtained price information on the accessories from other manufacturers, combined that with the information he had on the Rundle fixtures and submitted estimates to Porter. He was assisted by Wallace. Discussion and revisions apparently went on until late December, with other wholesalers also in contact with Porter during this period. Porter was awarded the mechanical contract in late December.

Porter tendered to Mechanical a purchase order in early February 1965 for some 1700 fixture units at a total price of about $75,000.00. Rundle's products accounted for a little more than one-half of this amount, or approximately $38,-000.00. Porter attached to the order an instrument to be signed by an official of Rundle, as follows:

"The attached Supplement is to be a part of this purchase order. For the purpose of this Purchase Order Only, Universal-Rundle Corp., designates and appoints Mechanical Wholesale, Inc., of Austin, Texas, its agent; and obligates itself to Porter Plumbing and Heating to accept, with said agent, the responsibility for timely deliveries of this order, to guarantee the materials for one year after date of installation and to hold Porter Plumbing and Heating harmless for all payments made for its benefit to said agent. This obligation shall inure to the benefit of General Contractor on

---

4. For convenience, the plaintiffs will be referred to as Schaffer and Mechanical and the defendant as Rundle.

5. Schaffer described a "take-off" as "a real detailed inventory * * * of what is required to do the job."

the EM Barracks Complex at Fort Hood, Texas, where the subject fixtures and equipment are to be installed.

UNIVERSAL-RUNDLE CORP.

By: . . . . . . . .

Title: . . . . . . ."

Ultimately Rundle's refusal to sign that instrument caused Mechanical to lose this large purchase order. Schaffer and Mechanical claim additional damages due to the impairment of the business reputation of the plaintiffs.

■ Without belaboring the testimony, we agree with the district court that the evidence made a case for the jury as to whether Rundle had orally obligated itself to Mechanical to enter into a contract in substance the same as that presented for Rundle's signature, and as to whether Wallace and Harber had actual or apparent authority so to obligate Rundle. We hold, however, that Schaffer was not a proper party-plaintiff.

■ The general rule is, of course, well established that an action to redress injuries to a corporation, whether arising out of contract or tort, cannot be maintained by a stockholder in his own name but must be brought in the name of the corporation, since the cause of action being in the corporation, the stockholder's rights are merely derivative and can be asserted only through the corporation.[6] The general rule is applicable in cases where the individual is the sole stockholder.[7] The rule does not apply in a case where the stockholder shows a violation of duty owed directly to him.[8] That exception to the general rule does not arise, however, merely because the acts complained of resulted in damage both to the corporation and to the stockholder, but is confined to cases where the wrong itself amounts to a breach of duty owed to the stockholder personally.[9]

The general rule was applied by this Court in an action by sole stockholders as individual plaintiffs for treble damages under the antitrust acts in Martens v. Barrett, 5 Cir. 1956, 245 F.2d 844, 846:

"And it is universal that where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone, and not its stockholders (few or many), officers, directors, creditors or licensors, who has a right of recovery, even though in an economic sense real harm may well be sustained as the impact of such wrongful acts bring about reduced earnings, lower salaries, bonuses, injury to general business reputation, or diminution in the value of ownership." (Footnotes omitted.)[10]

The evidence disclosed no breach of duty owed directly to Schaffer individually. In brief, he argues simply that "Victor Schaffer owned all of the stock of Mechanical Wholesale, Inc., and a damage to its good will and reputation was necessarily a damage to his." Under the authorities heretofore cited, that consideration does not afford to Schaffer any right of action in his own name.

■ Schaffer and Mechanical then resort to the harmless error rule and urge that, "If Victor Schaffer was improperly joined as a party, no possible harm could have come to Rundle thereby, and

---

6. Stinnett v. Paramount-Famous Lasky Corp., Comm'n of App. of Tex., 1931, 37 S.W.2d 145, 149; Cullum v. General Motors Acceptance Corp., Tex.Civ.App.1938, 115 S.W.2d 1196, 1201; Commonwealth of Massachusetts v. Davis, 1942, 140 Tex. 398, 168 S.W.2d 216, 221; 18 C.J.S. Corporations § 559, pp. 1272, et seq.; 19 Am.Jur.2d Corporations, § 526, pp. 61, 62; Ann., 167 A.L.R. 279.

7. Stinnett v. Paramount-Famous Lasky Corp., supra note 6.

8. Cullum v. General Motors Acceptance Corp., supra note 6.

9. Cullum v. General Motors Acceptance Corp., supra note 6.

10. See also, Ann., 36 A.L.R.2d 1345, 1351.

the judgment may be reformed by dropping him from it." We do not agree.

The jury's general verdict was for the "plaintiffs" (plural) for $70,000.00 damages, when the total amount of the lost order was only $75,000.00. Obviously, the damages awarded were far in excess of any lost profits or expenses and probably included consideration of such intangible elements as damage to the good will and business reputation not only of Mechanical, a newly-formed corporation, but more importantly of Schaffer as an individual.

Under our broad power to "require such further proceedings to be had as may be just under the circumstances," [11] we have considered affirming the determination of liability to Mechanical and reversing for the ascertainment of its damages. In Constitution Pub. Co. v. Dale, 5th Cir. 1947, 164 F.2d 210, 213, we said:

> "Whether or not a joint and several judgment shall be reversed in its entirety is a matter resting solely within the discretion of the court. The criterion is, How may the ends of justice best be served?"

Under all of the circumstances of this case, including the probability that the jury based its verdict disproportionately on a consideration of the damages suffered by Schaffer individually, we think it more just to reverse the judgment in favor of Schaffer and Mechanical in its entirety and remand for a new trial.

■ As for the judgment in favor of Rundle on the claims for violation of the Sherman Act and of the Robinson-Patman Act, we agree with the district court and affirm. We find no substantial evidence of any conspiracy between Rundle and Universal Southwest, Inc. necessary to prove a violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Even if that deficiency might possibly be remedied on a new trial, we see no possibility of proof either of a per se violation of the Sherman Act or of conduct reasonably calculated to prejudice the public interest.[12]

■ The Robinson-Patman Act, 15 U.S.C. § 13, relates to discrimination in price, services or facilities as between different customers. What Rundle declined to do was to designate and appoint Mechanical as its agent and to guarantee materials of other manufacturers for one year after date of installation. True, Porter testified that when he insisted on such an absolute assumption of liability by Rundle:

> "And finally Mr. Harber asked if I would be willing to transfer the order to somebody, and I don't remember his name; I don't know him. He apparently had worked with Universal Rundle and was opening a place of business of his own in Houston. He was well acquainted with him, he trusted him, and they would sign it and go along with him.

> "Well, I had no reason for changing the order because the only reason that I even requested any kind of guarantee on the order was for the simple reason that I didn't know this man."

Mechanical had just become a distributor for Rundle, and this was Rundle's first order through Mechanical. Rundle owned one-third of the stock in Southwest; Barrett, the dominant personality in Southwest, had worked with Rundle and Harber knew Barrett well. These facts do not make out a case of discrimination by Rundle as between Mechanical and Southwest. There was ample reason why Rundle would be willing to appoint Southwest as its agent and to become jointly liable on its contract and would not be willing to enter into such an arrangement with Mechanical. Rundle was not discriminating in prices, services or facilities as between different distributors of its products, but it was willing to enter into a new

---

11. 28 U.S.C. § 2106.

12. See Cherokee Laboratories, Inc. v. Rotary Drilling Services, Inc., 5th Cir. 1967, 383 F.2d 97, 104; Rogers v. Douglas Tobacco Board of Trade, 5th Cir. 1959, 266 F.2d 636, 644.

legal relationship with one of its distributors and not with the other. The evidence does not establish that such a choice falls within the interdiction of the Act. The district court properly held that Mechanical did not discharge its burden of proving that Rundle discriminated against it in violation of the Robinson-Patman Act.

The judgment in favor of Rundle on the claims for violation of the Sherman Act and of the Robinson-Patman Act is affirmed. The judgment in favor of Schaffer against Rundle is reversed, with directions to dismiss Schaffer as a party-plaintiff. The judgment in favor of Mechanical against Rundle is reversed and the cause is remanded for a new trial. The costs of appeal are taxed against Schaffer and Mechanical.

Affirmed in part, reversed in part, and reversed and remanded in part.