**James Bennett COLE, Plaintiff,**

v.

**FORD MOTOR COMPANY, Ford Motor Credit Company, Jim Cole Ford, Inc., John D. Brown, John F. Mallon and D.M. Coleman, Defendants.**

Civ. A. No. 81–1760.

United States District Court,
W.D. Pennsylvania.

June 10, 1983.

---

Ralph N. Albright, Jr., Washington, D.C., A. Bruce Bowden, Paul D. Kruper, Pittsburgh, Pa., for plaintiff.

Lee A. Rau, Paul L. Landry, Washington, D.C., Gilbert J. Helwig, Kathy K. Condo-Caritis, Pittsburgh, Pa., for Ford Motor Co., Ford Motor Credit Co., Brown, Mallon & Coleman.

Thomas P. Lutz, Pittsburgh, Pa., for Jim Cole Ford, Inc.

## OPINION

MANSMANN, District Judge.

This matter is before the Court on Motions for Summary Judgment filed by Defendants Ford Motor Credit Company ("FMCC"), John D. Brown, John F. Mallon and D.M. Coleman as well as a Motion for Partial Summary Judgment filed by Defendant Ford Motor Company ("Ford").[1]

This case arises out of the establishment and failure of a Ford automobile dealership in Bellevue, Pennsylvania. For the reasons set forth below, the Motions are granted in part and denied in part.

\* \* \*

### FACTUAL BACKGROUND

Plaintiff is an individual presently residing in the District of Columbia. He operated the automobile dealership here in question from May 1978 to April 1979.

Defendant Ford is a Delaware corporation with its principal place of business in Michigan. Ford manufactures and sells automobiles and trucks world-wide.

Defendant FMCC, a wholly-owned subsidiary of Ford, is also a Delaware corporation with its principal place of business in Michigan. FMCC provides wholesale and retail financing to credit-worthy Ford dealerships.[2]

Defendant JCF, a Delaware corporation, was an automobile dealership located in Bellevue, Pennsylvania.

Defendants Brown, Mallon and Coleman are or were employees of Ford[3] who also were, at various times, directors of JCF.

From August 1975 through February 1977, Plaintiff participated in Ford's Minority Dealer Training Program. During this time, Plaintiff had discussions with Ford employees concerning the operation of his own Ford dealership. Plaintiff was subsequently offered the opportunity to obtain the Ford dealership in Bellevue.

Plaintiff applied for financing under Ford's Dealer Development Program. The purpose of this Program is to provide financial assistance to prospective dealers who lack sufficient capital to purchase a Ford dealership. Under the Dealer Development Program, Ford will invest up to 80% of the capital necessary to start a dealership. The

---

1. Defendant Jim Cole Ford, Inc. ("JCF") has not filed any such motions.

2. Wholesale financing is the financing of the dealership's "floor plan." Retail financing is the financing of retail car purchases by individual customers.

3. Specifically, at all times material hereto, Defendant Brown was the Branch Manager of the Pittsburgh branch of the Ford Dealer Development Program, Defendant Mallon was the Operations Manager East for the Dealer Development Program and Defendant Coleman was and is an Investment Representative with the Program.

individual operator provides the remaining capital. Ford receives preferred, voting stock in exchange for 50% of its capital investment and takes a long-term note for the remainder of its investment. The operator receives common, non-voting stock in exchange for his or her capital investment. The operator is to purchase stock from Ford until he or she owns all of the stock in the dealership corporation. At that point, Ford's investment in the dealership is terminated.

Plaintiff and Ford executed a Dealer Development Agreement, as well as other agreements, on May 1, 1978. JCF was incorporated on April 25, 1978 and commenced operation on May 4, 1978.

Plaintiff invested $40,000 in JCF for which he received non-voting common stock. Ford invested $80,000 in JCF for which it received voting preferred stock and a long-term note.

During its period of operation, the dealership lost money. In March 1979, Mellon Bank cancelled the dealership's floor-plan line of credit because of its deteriorating financial condition.[4] Plaintiff requested a floor-plan line of credit from FMCC but was refused because of the dealership's losses and poor financial condition.

On April 3, 1979, Ford terminated its Dealer Development Agreement with Plaintiff. The management contract between JCF and Plaintiff was terminated on the same day. On July 5, 1979, Ford informed Plaintiff that it would discontinue JCF.

Plaintiff brought the present action in the United States District Court for the District of Columbia pursuant to § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder by the Securities and Exchange Commission (Count I); the Dealer Day in Court Act, 15 U.S.C. §§ 1221–1225 (Count II); and § 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e) (Count VI).[5] Plaintiff also alleges breach of fiduciary duties (Count III), common law fraud (Count IV), and unconscionability (Count V). On September 25, 1981, upon motion of Defendants, the case was transferred to this District.

Defendants Ford, FMCC, Brown, Mallon and Coleman filed counterclaims against Plaintiff for breach of contract, tortious interference with contract and bad faith. Defendant JCF counterclaimed against Plaintiff for breach of contract, breach of fiduciary duties and bad faith.

Defendants FMCC, Brown, Mallon and Coleman have subsequently filed Motions for Summary Judgment as to all six counts of the Complaint. Ford has filed its Motion for Partial Summary Judgment as to Counts I, III, and VI of the Complaint.

Plaintiff has consented to the entry of summary judgment in favor of Defendants FMCC, Brown, Mallon and Coleman as to Count II. Therefore, this Court need not address that count at this juncture. Plaintiff's claim under the Dealer Day in Court Act shall proceed to trial as against Defendant Ford.[6]

Plaintiff has also consented to the entry of summary judgment in favor of FMCC as to Counts III and V.

\* \* \*

Under Fed.R.Civ.P. 56(c), summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court of Appeals for

---

**4.** Plaintiff had obtained wholesale financing from Mellon Bank and retail financing from FMCC.

**5.** Count VI is brought by Plaintiff derivatively on behalf of JCF against all Defendants except JCF. The other counts are brought against all Defendants including JCF.

**6.** It is unclear as to whether Plaintiff intends to press his claim under the Dealer Day in Court Act as against Defendant JCF. In his brief, Plaintiff stated that he "will proceed with his claim against Ford Motor." Plaintiff's Brief at 28. Since Defendant JCF filed no Motion for Summary Judgment, we have no question before us concerning the legal validity of any of Plaintiff's claims against Defendant JCF.

the Third Circuit has made clear that any doubts as to the existence of genuine issues of fact are to be resolved against the moving parties. *Continental Ins. Co. v. Bodie,* 682 F.2d 436, 438 (3d Cir.1982); *Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). Further, the facts and the inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *Continental Ins. Co. v. Bodie, supra* at 438; *Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981).

Under Fed.R.Civ.P. 56(e), however, parties resisting summary judgment motions may not rest upon bare assertions or conclusory allegations. *Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981). In particular, they may not rely upon the statements in their pleadings. Rather, their response, by affidavits or otherwise, "must set forth specific facts showing that there is a genuine issue for trial. If (they) do not so respond, summary judgment, if appropriate, shall be entered against (them)." Fed.R.Civ.P. 56(e).

As a general rule, courts do not favor the summary disposition of cases on their merits. Nevertheless, in an appropriate case, an early disposition may save the parties needless and often considerable time and expense which otherwise would be incurred during trial. At minimum, a partial disposition of the case at an earlier stage will refine the issues which remain for final resolution.

With the above standard in mind, we will consider the challenges to each claim separately and will resolve them accordingly.[7]

\* \* \*

## I. CLAIM UNDER THE SECURITIES EXCHANGE ACT

Defendants contend that Plaintiff does not have a cause of action under § 10(b)

and Rule 10b–5 because the stock he purchased and the contracts into which he entered were not securities within the meaning of the Securities Exchange Act. Specifically, Defendants maintain that the "economic realities" test described in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), must be applied to this transaction and that under this test, Plaintiff did not purchase securities within the meaning of the Act.

Plaintiff replies that the "economic realities" analysis should be used only if the stock he purchased lacks the traditional attributes of stock. According to Plaintiff, his stock possessed most of the traditional characteristics of stock and therefore constitutes a security within the meaning of the Act.

Section 10(b) of the Securities Exchange Act of 1934 applies to the purchase or sale of a security. 15 U.S.C. § 78j(b).[8]

The term, "security" is defined, "unless the context otherwise requires," as:

> ... any note, *stock,* treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral—trust certificate, preorganization certificate or subscription, transferable share, *investment contract,* voting-trust certificate, certificate of deposit, for a security, or in general, any instrument commonly known as a "security" ... (emphasis added)

15 U.S.C. § 78c(a)(10).

In *United Housing Foundation, Inc. v. Forman, supra,* the Supreme Court con-

---

**7.** For convenience, Defendants' contentions will be addressed in the order set forth by Defendants in their brief.

**8.** Section 10(b) states in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

sidered the applicability of the federal securities laws to sales of stock shares in a cooperative housing project. The Court noted that the name attached to the item or transaction is not dispositive. Rather, " 'in searching for the meaning and scope of the word "security" in the Act, form should be disregarded for substance and the emphasis should be on economic reality.' " *Forman, supra* at 848, 95 S.Ct. at 2058, quoting *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). The Court, however, made clear that the name given to the instrument is not wholly irrelevant to the question of whether it is a security. Use of a traditional name such as "stock" may lead a purchaser to justifiably assume that the federal securities laws apply, particularly when "the underlying transaction embodies some of the significant characteristics typically associated with the named instrument." *Forman, supra* 421 U.S. at 851, 95 S.Ct. at 2060.

In part IIA of its Opinion, the Court considered whether the shares of "stock" there in question possessed some of the significant attributes typically associated with stock. The Court found that the shares lacked such common characteristics as "the right to receive dividends contingent upon an apportionment of profits," negotiability, voting rights and the capacity to appreciate in value. *Id.* Therefore, the shares were not "stock" within the meaning of § 3(a)(10) of the 1934 Act. 15 U.S.C. § 78c(a)(10). *See also* § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1).

In part IIB of its Opinion, the Court analyzed the issue of whether the instrument or transaction could be considered an "investment contract" within the meaning of § 3(a)(10). The basic test for determining the existence of an investment contract is " 'whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.' " *Forman, supra* 421 U.S. at 852,

95 S.Ct. at 2060, quoting *S.E.C. v. W.J. Howey Co.,* 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946).

Some courts have applied the test described in part IIB of *Forman*[9] to all instruments and transactions when determining whether they fall within the scope of the federal securities laws. *See, e.g., Canfield v. Rapp & Son, Inc.,* 654 F.2d 459 (7th Cir.1981); *Anchor-Darling Industries, Inc. v. Suozzo,* 510 F.Supp. 659 (E.D.Pa.1981).

■ We decline to do so. We believe that the Supreme Court in *Forman* applied two different tests or definitions—one for "stock" and one for an "investment contract." The "efforts of others" test described in part IIB of *Forman* is to be used when determining the existence of an investment contract. It is not necessarily applicable when deciding whether or not an instrument is "stock." *See Mifflin Energy Sources, Inc. v. Brooks,* 501 F.Supp. 334 (W.D.Pa.1980). *Accord, Cole v. PPG Industries, Inc.,* 680 F.2d 549 (8th Cir.1982); *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir. 1982); *Coffin v. Polishing Machines, Inc.,* 596 F.2d 1202 (4th Cir.) *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979); *Sterling Recreation Organization Co. v. Segal,* 537 F.Supp. 1024 (D.Colo.1982); *Titsch Printing, Inc. v. Hastings,* 456 F.Supp. 445 (D.Colo.1978); *Bronstein v. Bronstein,* 407 F.Supp. 925 (E.D.Pa.1976).

■ It is clear in the instant case that Plaintiff's investment was not a scheme where the profits were to be derived solely or even substantially from the efforts of others. *See Forman, supra* 421 U.S. at 852, 95 S.Ct. at 2060; *Howey, supra* 328 U.S. at 301, 66 S.Ct. at 1104; *S.E.C. v. Glenn W. Turner Enterprises, Inc.,* 474 F.2d 476, 482 (9th Cir.), *cert. denied,* 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973) (A more realistic test is "whether the efforts made by those other than the investor are the undeniably

---

**9.** This test is occasionally referred to as the "economic realities" test. We feel that this name is a misnomer. The Court in *Forman* was evaluating the "economic realities of the transaction in part IIA of its Opinion when it

examined the attributes of the alleged "stock" just as much as in part IIB when it applied the "efforts of others" test to ascertain the existence of an investment contract.

significant ones, those essential managerial efforts which affect the failure or success of the enterprise.") In this case, the significant and essential managerial efforts were made by Plaintiff rather than Defendants. Plaintiff's involvement in the dealership was substantial; his managerial responsibilities and efforts were clearly extensive and significant. *See* Plaintiff's Deposition at 244–46. Thus, it cannot be said that the transaction in this case was an investment contract. *See Forman, supra; Howey, supra.*

■ The question of whether Plaintiff purchased "stock" within the meaning of § 3(a)(10) of the Act is a more difficult one.

Plaintiff had no voting rights.[10] Dealer Development Agreement at Art. V, 5.04. Plaintiff did, however, have the right to receive dividends on his stock. *See* Dealer Development Agreement at Art. IV, 4.01. Plaintiff was required to apply any dividends to the purchase of additional stock. *See* Dealer Development Agreement at Art. VI, 6.01. Nevertheless, the right to *receive* dividends did exist, albeit with a restricted use.[11]

Further, the Agreement expressly granted Plaintiff the right "to sell, assign, hypothecate, transfer or otherwise dispose" of his stock with the caveat that Ford Marketing or its nominee was to have the right of first refusal. Dealer Development Agreement at Art. IX, 9.01. Should Ford Marketing or its nominee fail to purchase the stock, Plaintiff was free to transfer to whomever he pleased. Dealer Development Agreement at Art. IX, 9.03.

Moreover, Plaintiff's stock could conceivably appreciate in value as the value of the dealership (the book value of the assets of the dealership over the book value of its liabilities) increased. *See* Dealer Develop-

ment Agreement at Art. XI, 11.01. Such appreciation could be realized through a sale of the stock to Ford Marketing or to another party.

The existence of some or most of the traditional attributes of stock, with some restrictions, renders this case a close question. Since we must view the facts and the inferences to be drawn from the facts in the light most favorable to Plaintiff,[12] we feel compelled to find that Plaintiff did purchase stock, and hence securities, within the meaning of § 3(a)(10) of the Act.

FMCC contends that even if the stock purchased by Plaintiff is covered by the federal securities laws, Plaintiff does not state a claim against FMCC under § 10(b) of the 1934 Act.

Plaintiff replies that he does state a claim against FMCC because FMCC had a duty to disclose certain information to Plaintiff. Alternatively, Plaintiff argues that FMCC is liable under § 10(b) as an "aider and abettor" to Ford's alleged violation.

■ Liability under § 10(b) for non-disclosure is premised upon a duty to disclose. *Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980). "And the duty to disclose arises when one party has information 'that the other (party) is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.'" *Id.* at 228, 100 S.Ct. at 1114 quoting Restatement (Second) of Torts § 551(2)(a) (1976).

■ We believe that FMCC did not owe any duty of disclosure to Plaintiff with regard to the purchase of Plaintiff's stock. In this regard, there is no basis for finding the existence of a relationship of trust and confidence between Plaintiff and FMCC at the time of Plaintiff's purchase. *See id.* at 228 and 230, 100 S.Ct. at 1114 and 1115.

**10.** Plaintiff would obtain the entire voting power upon the retirement of all preferred stock. Dealer Development Agreement at Art. V, 5.04.

**11.** Since Plaintiff was required by the Agreement to use his dividends to purchase additional stock, his dividends can be analogized to stock dividends rather than to cash dividends.

**12.** *See Continental Ins. Co. v. Bodie, supra* at 438; *Betz Laboratories, Inc. v. Hines, supra* at 404 (1981). We note that Ford chose to structure its transaction in this particular manner. By so doing, Ford exposed itself to the risk that *the transaction would be covered by the federal* securities laws.

Indeed, FMCC was not even a party to the stock transaction between Plaintiff and Ford. *See id.* at 230, 100 S.Ct. at 1115 ("such liability is premised upon a duty to disclose arising from a relationship of trust and confidence *between parties to a transaction* (emphasis added)").[13]

We also reject the notion that FMCC can be held liable on an "aider and abettor" theory.

■ To sustain an allegation of aiding and abetting, a Plaintiff has the burden of establishing:

(1) that there has been a commission of a wrongful act—an underlying securities violation; (2) that the alleged aider-abettor had knowledge of that act; and (3) that the aider-abettor knowingly and substantially participated in the wrongdoing. *Monsen v. Consolidated Dressed Beef Co.,* 579 F.2d 793, 799 (3d Cir.), *cert. denied,* 439 U.S. 930 [99 S.Ct. 318, 58 L.Ed.2d 323] (1978). *See also Rochez Bros. v. Rhoades,* 527 F.2d 880, 886 (3d Cir.1975) ("*Rochez II*").

■ The facts as alleged do not sustain a conclusion that FMCC's conduct is sufficient to constitute substantial assistance or participation in the alleged wrongs. Assuming the existence of the first two requirements, FMCC's conduct, at best, is simply inaction. Since, as already discussed, FMCC had no duty to disclose, its inaction cannot provide a basis for liability. *See Chiarella, supra. See also Monsen, supra* at 800.

Moreover, the facts do not support the proposition that FMCC's inaction was consciously intended to assist in the perpetration of Ford's alleged wrongs with respect

to the sale of the stock to Plaintiff. *See Monsen, supra* at 800; *Gould v. American-Hawaiian Steamship Co.,* 535 F.2d 761, 779 (3d Cir.1976). We note in this regard that FMCC is not involved in Ford's negotiations with prospective operators. *See* Affidavit of James M. Overly, para. 6 at 2. Further, there is no indication that the decision to grant or withhold financing to a prospective operator is made jointly by FMCC and Ford.[14]

Thus, Plaintiff cannot sustain his claim against FMCC under § 10(b) and Rule 10b-5.

■ The individual Defendants contend that they are not liable under § 10(b) and Rule 10b-5 because during the period of their involvement with Plaintiff, they were acting as agents of Ford within the scope of their employment.

We agree with Plaintiff that this contention has no merit. Both the statute and the rule apply, by their express terms, to "any person" who has allegedly engaged in certain deceptive and fraudulent activities. *See* 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5. Clearly, direct participants in the alleged deception or fraud may be primarily liable under the Act.[15] *See Epprecht v. Delaware Valley Machinery, Inc.,* 407 F.Supp. 315, 320 (E.D.Pa.1976). Further, a party may be secondarily liable as an "aider and abettor" or as a "controlling person" under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a). *See id. See also Rochez II, supra.*

Defendant Mallon also asserts that he is not liable under § 10(b) because he was not involved in the negotiations with Plaintiff and also because no representations or admissions are alleged to have been made by him.

---

**13.** The fact that FMCC is a wholly-owned subsidiary of Ford does not provide a basis for finding a relationship of trust and confidence between FMCC and Plaintiff nor does it render FMCC a party to the stock transaction between Plaintiff and Ford. Plaintiff admits that FMCC is a separate corporation. *See* Plaintiff's Brief at 15.

**14.** *See* Overly Affidavit, para. 7 at 2 ("If FMCC receives an application for floor plan financing from an operator or from a prospective opera-

tor, FMCC makes an independent investigation into the credit worthiness of the applicant. Based on this investigation, FMCC makes a business judgment about the operator's credit worthiness.").

**15.** The case cited by Defendants in support of their argument, *Wicks v. Milzoco Builders, Inc.,* 291 Pa.Super.Ct. 345, 435 A.2d 1260 (1981) (Petition for Allowance of Appeal granted Jan. 7, 1982), has no applicability to Plaintiff's claim under § 10(b) and Rule 10b-5.

Plaintiff does not specifically address these assertions in his brief. In his Response to Defendant Mallon's Motion for Summary Judgment, however, Plaintiff does proffer his answers to several interrogatories as well as portions of his deposition testimony in order to counter Mallon's allegations.

We do not believe that Plaintiff's answers to the specified interrogatories implicate Defendant Mallon. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, Nos. 5, 6, 7 and 8. Those answers discuss only Defendant Brown's involvement in the alleged fraud and deception. Plaintiff's deposition testimony, however, does directly implicate Defendant Mallon. *See* Plaintiff's Deposition at 126–27 and 340–41. Therefore, Mallon may conceivably be primarily liable under § 10(b) and Rule 10b–5.

 Furthermore, Mallon may also be secondarily liable as a "controlling person" under § 20(a) of the 1934 Act, 15 U.S.C. § 78t(a),[16] if the facts adduced at trial establish his "culpable participation" in fraudulent conduct.[17] *See Sharp v. Coopers & Lybrand,* 649 F.2d 175, 185 (3d Cir.1981), *cert. denied,* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982); *Rochez II, supra,* at 890.[18]

Hence, Plaintiff can maintain his federal securities claims against all of the individual defendants as well as Ford Motor Company. Only FMCC's Motion for Summary

Judgment shall be granted as to this count of the Complaint.

\* \* \*

## II. CLAIM UNDER THE ROBINSON–PATMAN ACT

Defendants argue that Plaintiff's contentions regarding discriminatory facility assistance, the dealer-operator's investment, the return and reimbursement of parts inventory and the provision of administrative assistance and financial support[19] do not fall within the scope of § 2(e) of the Robinson-Patman Act ("Act"), 15 U.S.C. § 13(e).[20]

Plaintiff responds that his contentions are encompassed by § 2(e) because they fall within the category of "merchandising" services.

 The services or facilities referred to in § 2(e) are limited to advertising, promotional or merchandising services. *See Cecil Corley Motor Co. v. General Motors Corp.,* 380 F.Supp. 819, 851 (M.D.Tenn.1974) (A leading case on this issue). *See also L & L Oil Co. v. Murphy Oil Corp.,* 674 F.2d 1113, 1118–19 (5th Cir.1982); *Diehl & Sons, Inc. v. Int'l Harvester Co.,* 445 F.Supp. 282, 285–86 (E.D.N.Y.1976) *("Diehl II")*.

The services must concern the purchaser's subsequent *resale* of the commodity. *Rickles, Inc. v. Frances Denney Corp.,* 508 F.Supp. 4, 6 (D.Mass.1980). The commodity itself may not be a service. Rather, the commodity must be a tangible product or good. *See Advanced Office Systems v.*

---

**16.** *See* Plaintiff's Complaint, para. 59 at 14.

**17.** Mallon's position as a director of JCF does not, in and of itself, render him liable under § 10(b) for the fraudulent representations and omissions of others. This is particularly so where Mallon was not even on the Board of Directors at the time Plaintiff purchased his stock. *See* Plaintiff's Response to Defendant Mallon's Motion, para. 8 at 2.

**18.** "To impose secondary liability on a controlling person for his inaction, the plaintiff must prove that the inaction 'was deliberate and done intentionally to further the fraud.'" *Sharp v. Coopers & Lybrand, supra* at 185, quoting *Rochez II* at 890.

**19.** The Complaint alleges only discriminatory facility assistance. Plaintiff's other contentions

are set forth in his Answers to Defendants' First Set of Interrogatories, Nos. 32 (concerning Ford) and 34 (concerning FMCC).

**20.** Section 2(e) states:

It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms.
15 U.S.C. § 13(e).

*Accounting Systems Co.,* 442 F.Supp. 418, 421 (D.S.C.1977) (interpreting the word, "commodities," in § 2(a) of the Act).

 Credit terms and financing are outside the coverage of § 2(e). *Diehl & Sons, Inc. v. Int'l Harvester Co.,* 426 F.Supp. 110, 122 (E.D.N.Y.1976) ("*Diehl I*"); *Rea v. Ford Motor Co.,* 355 F.Supp. 842, 851 and 869 (W.D.Pa.1973), *aff'd in part and rev'd in part,* 497 F.2d 577 (3d Cir.) (no discussion of the Robinson-Patman Act), *cert. denied,* 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 106 (1974).

 We believe that facility assistance may be considered merchandising services, depending on the specific assistance at issue. Whether or not JCF [21] received facility assistance which was proportionally equal [22] to that received by other dealerships, as Defendants assert, is an issue of material fact to be resolved at trial.[23] In this regard, Plaintiff contends that JCF did not receive any of the facility assistance offered and provided to other competing dealerships. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, Nos. 31, 35 and 37.

Plaintiff provides no facts supporting a Robinson-Patman Act claim against Defendant Coleman. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, Nos. 39 and 40.[24] Therefore, Coleman's Motion for Summary Judgment shall be granted as to this claim.

FMCC's Motion for Summary Judgment as to this claim must also be granted. Plaintiff admits that FMCC did not discriminate against JCS with respect to facility

assistance. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, No. 33. Plaintiff's only allegation of discrimination by FMCC concerns the provision of floor plan financing. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, No. 34. This allegation cannot provide the basis for a claim under § 2(e) of the Act. *See Diehl I, supra; Rea v. Ford Motor Co., supra.*

Plaintiff can maintain his Robinson-Patman Act claim against Defendants Brown and Mallon. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, Nos. 35 and 37. He may also proceed with his § 2(e) claim against Ford. *See* Plaintiff's Answers to Defendants' First Set of Interrogatories, No. 31.

\* \* \*

## III. PENDENT CLAIMS

Defendants have challenged each of Plaintiff's pendent claims—the alleged breach of fiduciary duties, common law fraud and unconscionability. We shall briefly address Defendants' contentions.

## A. BREACH OF FIDUCIARY DUTIES

Defendants assert that a breach of fiduciary duties claim may only be brought as a derivative action on behalf of the corporation. Plaintiff disagrees, arguing that he may pursue this claim to recover for "direct" injuries to himself.

 Normally, the fiduciary obligations of officers and directors are enforceable directly by the corporation or through a shareholder's derivative action. *Brown v.*

---

**21.** We again note that Plaintiff brings the claim under § 2(e) of the Robinson-Patman Act, 15 U.S.C. § 13(e), derivatively on behalf of JCF. *See* n. 5 *infra.* Defendants do not challenge the maintenance of this claim as a derivative action. Therefore, we shall not address its propriety.

**22.** Section 2(e) only requires that the services or facilities be accorded on "proportionally equal terms." 15 U.S.C. § 13(e).

**23.** To sustain a case under the Act, the party alleging discrimination must be a customer of the seller within approximately the same time period that the service or facility is provided to a competitor. *England v. Chrysler Corp.,* 493

F.2d 269, 272 (9th Cir.), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Hence, Plaintiff must limit his proof at trial to those competing dealerships who received facility assistance at or near the time period that JCF could have received such assistance, namely, at or near the period when JCF was in operation. *See id.*

**24.** *See also* Coleman Affidavit, para. 25 at 6 ("In my capacity as a Dealer Development Investment Representative, I am not in any way involved with granting or denying assistance for a dealership to build a new facility.").

*Presbyterian Ministers Fund,* 484 F.2d 998 (3d Cir.1973).[25] *See also Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir.1968). The general rule is applicable even where the individual is the sole stockholder. *Id.*

Some courts have carved out an exception, permitting a cause of action in favor of the individual shareholder, where the alleged wrong violates a duty owed directly to the shareholder. *Empire Life Ins. Planners Co. of America v. Valdek Corp.,* 468 F.2d 330, 335 (5th Cir.1972); *Schaffer, supra* at 896. This exception to the general rule, however, does not arise merely because the alleged wrong resulted in damage both to the corporation and to the shareholder. *Schaffer, supra.* Thus, there must be a duty owed to the shareholder personally. *Id.*

We perceive no basis for finding a duty owed directly to Plaintiff. Rather, Defendants' fiduciary obligations were to JCF. Therefore, the exception to the general rule does not apply here.

We will, however, permit Plaintiff to amend his Complaint, in a manner consistent with Fed.R.Civ.P. 23.1, so that he may proceed with this claim derivately on behalf of JCF. Plaintiff may also maintain this claim against all of the individual defendants,[26] including Coleman who may be liable for the four-day period in which he was a director and officer of JCF.

## B. UNCONSCIONABILITY

Defendants Coleman, Brown and Mallon argue that summary judgment should be granted in favor of them with respect to Plaintiff's claim under Count V of the Complaint.

In Count V, Plaintiff alleges the following:

On information and belief, Ford Motor's Minority Dealer Program, and the Defendant's (sic) use thereof and practices thereunder, were unconscionable and unenforcable (sic) because Defendants induced Plaintiff to enter into this Program solely for the purpose of increasing the number of minority persons among its dealers without the intent or expectation that Plaintiff's dealership would succeed or that any efforts would be made by Defendants to increase the likelihood of success of the Minority Dealer Program in general, and Plaintiff's Dealership in particular.

*See* Complaint, para. 80 at 20.

Plaintiff, however, in his Answers to Defendants' First Set of Interrogatories, Nos. 54, 55 and 56, admits that Coleman, Brown and Mallon did *not* induce Plaintiff "to enter into Ford's Minority Dealer Program solely for the purpose of increasing the number of minority persons among its dealers without the intent or expectation that Plaintiff's dealership would succeed, or that any efforts would be made by Ford to increase the likelihood of the success of the Minority Dealer Program in general, or plaintiff's dealership in particular ...."

Therefore, Plaintiff does not state a claim with respect to the allegations set forth in paragraph 80 of his Complaint.

Plaintiff further alleges in Count V that Defendants enforced various agreements in an unconscionable manner. *See* Complaint, para. 81 at 20–21.

Plaintiff does not make clear as to whether this claim arises in tort or in contract. If Plaintiff brings this claim in contract, then clearly Defendants Coleman, Brown and Mallon are not liable because they were acting on behalf of a disclosed principal. If Plaintiff brings this claim in tort and intends to pursue it as such, then he must

**25.** Defendants raise a choice of laws question with respect to this claim. They argue that Delaware law applies here and that under Delaware law, this claim must be brought as a derivative action. Plaintiff argues that Pennsylvania law should apply here. We believe that a true "conflicts of laws" situation does not exist here because Pennsylvania law would also require a *derivative action for this claim. See Willis v. Dillsburg Grain & Mill Co.,* 490 F.Supp. 46, 49 (M.D.Pa.1980).

**26.** Defendants' "agency" defense is without merit.

provide this Court with authorities to support the existence of such a tort action.[27]

Therefore, we shall reserve decision on the Motions for Summary Judgment filed by Defendants Coleman, Brown and Mallon with respect to Count V until Plaintiff, should he choose to pursue this claim, provides clarification and supporting law.

## C. COMMON LAW FRAUD

Defendant FMCC contends that Plaintiff does not state a claim for common law fraud because FMCC had no duty of disclosure and was not a party to the agreements in question.

Plaintiff's factual allegations of false statements and representations [28] do not support a claim against FMCC because they do not implicate FMCC. His factual allegations of nondisclosure [29] do not support a claim against FMCC because FMCC owed no duty of disclosure to Plaintiff. *See* Discussion of Count I *infra. See also Lehner v. Crane Co.,* 448 F.Supp. 1127, 1130–31 (E.D. Pa.1978); Restatement (Second) of Torts § 551 (1977).

Therefore, we must grant FMCC's Motion for Summary Judgment as to this claim.

Plaintiff may maintain his claim of common law fraud against the remaining Defendants.

An appropriate Order follows.

## ORDER

And now, this 10th day of June, 1983, FMCC's Motion for Summary Judgment as to Plaintiff's action under the federal securities laws (Count I) is hereby GRANTED. The Motions for Summary Judgment filed by Defendants Brown, Mallon and Coleman as well as the Motion For Partial Summary Judgment filed by Defendant Ford as to this count are hereby DENIED.

Judgment is hereby entered, with Plaintiff's consent, in favor of Defendants FMCC, Brown, Mallon and Coleman as to Plaintiff's action under the Dealer Day in Court Act (Count II).

Judgment is hereby entered, with Plaintiff's consent, in favor of Defendant FMCC as to Plaintiff's action for breach of fiduciary duties (Count III). The Motions for Summary Judgment filed by Defendants Brown, Mallon and Coleman as well as the Motion for Partial Summary Judgment filed by Defendant Ford as to this count are hereby DENIED. Plaintiff may amend his Complaint with respect to this count, in accordance with the foregoing Opinion, on or before June 20, 1983.

The Motion for Summary Judgment filed by FMCC as to Plaintiff's action for common law fraud (Common IV) is hereby GRANTED. The Motions for Summary Judgment filed by Defendants Brown, Mallon and Coleman as to this count are hereby DENIED.

Judgment is hereby entered, with Plaintiff's consent, in favor of Defendant FMCC as to Plaintiff's claim of unconscionability (Count V). The Motions for Summary Judgment filed by Defendants Coleman, Brown and Mallon as to this count shall be held in abeyance. Plaintiff shall submit clarification of this claim, as well as supporting legal authorities, on or before June 20, 1983.

The Motions for Summary Judgment filed by Defendants FMCC and Coleman as to Plaintiff's action under the Robinson-Patman Act (Count VI) are hereby GRANTED. The Motions for Summary Judgment filed by Defendants Brown and Mallon as well as the Motion for Partial Summary Judgment filed by Defendant Ford as to this count are hereby DENIED.

The Pretrial Stipulation shall be filed on or before July 29, 1983. The Pretrial Conference shall be held on August 31 at 4:00 p.m. in Courtroom No. 8, 9th floor, USPO & Courthouse Building, Pittsburgh, Pennsyl-

---

**27.** The authorities cited by Plaintiff in his brief do not support the existence of a tort of unconscionability or a tort of unconscionable enforcement of a contract.

**28.** *See* Complaint, para. 18 and 20 at 4–5.

**29.** *See* Complaint, para. 19 and 21 at 5–7.

vania. Trial is tentatively set for September, 1983.