LAWRENCE L. REEVE[1] & another[2] *vs.* FOLLY HILL LIMITED
PARTNERSHIP & others.[3]

No. 92-P-962.

Middlesex. September 17, 1993. - February 22, 1994.

Present: PERRETTA, KASS, & PORADA, JJ.

*Contract*, Ratification. *Agency*, Ratification. *Partnership*, Limited partnership, Consent of limited partner. *Fiduciary. Practice, Civil*, Attorney's fees.

In an action by the limited partner against the general partners of a partnership formed for the purpose of building and selling condominium units, which the parties had agreed would be constructed under a fixed-price contract, the record did not support the judge's conclusion that the limited partner had ratified the general partners' payment of construction cost overruns. [93-95]

The relationship between the limited partner and the general partners of a business partnership was fiduciary in nature; consequently, the limited partner was protected against losses resulting from self-dealing by the general partners. [95-97]

A limited partner who held a fifteen percent interest in a partnership formed for the purpose of building and selling condominium units, which the parties had agreed would be constructed under a fixed-price contract, was entitled to recover from the general partners fifteen percent of the amount of construction cost overrun payments by the general partners, to which he had not agreed [97]; however, inasmuch as the limited partner's claims were for his benefit alone and were not derivative in nature, he was not entitled to recover his attorney's fees [97].

---

[1]Individually and as a limited partner of Folly Hill Limited Partnership.

[2]Abbott L. Reeve, as trustee of Folly Hill Associates Trust. Although Abbott L. Reeve was listed in the lower court docket as joining in the notice of appeal, both the appellant and the appellee assert in their briefs that Abbott is not a party to this appeal.

[3]Robert P. Sullivan and Frederick H. Baldwin, Jr., individually and as trustees of Kingswood Realty Trust, a nominee trust.

CIVIL ACTION commenced in the Superior Court Department on March 14, 1990.

The case was heard by *Herbert Abrams*, J.

*James C. Rehnquist* for the plaintiffs.

*Reginald L. Marden* for the defendants.

PERRETTA, J. On February 21, 1984, the plaintiff, Lawrence L. Reeve, and the defendants, Frederick H. Baldwin and Robert P. Sullivan, formed the Folly Hill Limited Partnership (the partnership). Reeve was a limited partner, Baldwin the managing general partner, and Sullivan a general partner. Baldwin and Sullivan were also trustees of a nominee trust, see *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639 & n.6 (1987), the Kingswood Realty Trust (Kingswood). The partnership was formed for the purpose of building and selling condominium units in Beverly. Kingswood was to act as general contractor for the project on a fixed-price basis. The dispute among the parties concerns the partnership's payment of cost overruns to Kingswood notwithstanding the fixed-price construction contract. The trial judge found that Reeve was aware of the overruns and had implicitly ratified the partnership's payment of them by allowing completion of the project. We conclude that, because Reeve made it known from the outset that he did not assent to a downward adjustment in his share of the partnership's profits on account of cost overruns, the judgment must be modified so that Reeve's damages reflect the construction price fixed by the contract.

1. *The facts.* We take the facts from the judge's findings and various documents put in evidence. After much negotiation, Reeve and his son conveyed land that they owned in Beverly to the partnership. As partial consideration for the conveyance, Reed received a fifteen percent interest — as a limited partner — in the partnership. Simultaneously with the formation of the partnership, i.e., February 21, 1984, the partnership entered into a construction contract with Kingswood. Baldwin and Sullivan signed the contract as general partners of the Folly Hill Limited Partnership and as trustees of the Kingswood Realty Trust. The contract called for

the construction of seventy condominium units at a "total cost" of $3,272,500. The parties do not dispute the trial judge's conclusion that the contract was one for a "fixed-price . . . with no provision for extra charges, change orders, cost overruns, or the like."

Although Reeve played no role in fixing the price of the construction, he was aware of the fact that Baldwin had relied on an architect in determining the amount set out in the contract.[4] Reeve was satisfied with the contract because of the contemplated sale price per unit, $70,000, upon which he had calculated his anticipated profit from the venture.

Thirty-three units were sold for prices that were based upon the original construction cost projections. However, by the fall of 1984, Baldwin became concerned that additional construction costs would be involved in completing the project and that the partnership would lose money unless the prices of the units were increased. After discussion with all interested parties, including Reeve, the prices of the units were increased, and the total amount of those increases, $414,000, was allocated for the extra construction costs.

On August 12, 1986, Reeve's attorney wrote to Baldwin to summarize Reeve's understanding of his recent discussions with his accountant, Baldwin, and Baldwin's accountant. Of particular pertinence in that letter are the following statements: "Based on the projected total gross sales price and allowing for payment of brokers' commissions and payment of the fixed-price construction contract of $3,272,500.00, you estimate that net profits to the Partners of Folly Hill Limited Partnership of between $3,875,000.00 and $4,010,000.00. Accordingly, Lawrence L. Reeve's 15% share as the Limited Partner of Folly Hill Limited Partnership will be between $578,500.00 and $601,500.00. . . . Since the actual cost of construction will exceed the guaranteed maximum price set forth in the February 21, 1984, construction con-

---

[4]It appears from the record that Baldwin had hired the architect and had entered into a contract with him. It also appears that Baldwin has an action pending against the architect for negligence in estimating the cost of construction.

tract with Kingswood Realty Trust, and since the Partner-
ship accounting will reflect those increased expenses leaving
less net profits for distribution on the books of the Partner-
ship, Mr. Reeve's 15% interest of the Partnership will be ad-
justed upward to reflect that differential so that he will ulti-
mately receive the same dollar amount that he would have
received if the fixed-price contract had not been exceeded."
Counsel closed the letter with the request that he be in-
formed immediately in writing if he had not correctly sum-
marized the understandings and agreements reached at
Reeve's meeting with his accountant and Baldwin. Copies of
this letter were also sent to Reeve and the accountants. If
there was any prompt, written disagreement with this letter,
it is not in the materials before us.

About five months later, on January 14, 1987, Baldwin
wrote to Reeve's accountant stating that he "really never an-
ticipated there being such a big difference in what we all as-
sumed to be your share of the profits (75-150,000) versus
your anticipated return" and enclosing a rough estimate of
additional costs and monies due Kingswood. A month later,
Reeve received a check from the partnership in the amount
of $100,000, as a distribution in anticipation of profits. When
the partnership failed to make any further distributions of
cash to him, Reeve brought this action claiming a breach of
fiduciary duty and seeking to have the partnership profits
calculated without regard for the construction cost overruns,
that is, on the basis of the fixed-price contract. The judge
found that most of the cost overruns had been incurred rea-
sonably and that Reeve had impliedly ratified payment of
them.

2. *Ratification by Reeve.* Although it was open to the
judge to find, as he did, that Reeve knew that Kingswood
was experiencing cost overruns, there is nothing in the record
before us which would support findings that Reeve knew the
amount of the overruns or that Baldwin was in fact paying
Kingswood the cost of the overruns. The only specific finding
made by the judge concerning Reeve's knowledge of the ac-
tual payment of the overruns reads: "Although Reeve never

approved in writing the actions taken by Baldwin as the Managing General Partner of Folly Hill Limited Partnership in charging certain costs overruns to the Partnership, he impliedly affirmed and did otherwise ratify the additional costs incurred by Baldwin in allowing him to complete the project, knowing full well that after eighteen months of construction the project could not be completed at the original cost of $3,272,500."

Even assuming that Reeve's knowledge that the project could not be completed at the original contract cost might in certain circumstances give rise to an implied ratification of the payments, but see *Puritan Med. Center, Inc.* v. *Cashman*, 413 Mass. 167, 172-175 (1992), we conclude that any suggestion of such a ratification in the present case is contradicted by the undisputed documentary evidence.

Under the terms of the partnership agreement and as expressly noted by the judge, Reeve had "no right, power or authority to participate in the management of or have any control over the [p]artnership's business." The general partners appointed Baldwin the managing general partner, and he "had full authority and exclusive right to manage and control the business and affairs of the [p]artnership." In concluding that Reeve "impliedly affirmed and did otherwise ratify the additional costs incurred by Baldwin in allowing him to complete the project," the judge failed to take into account that, under the partnership agreement, Reeve had no authority with respect to the payment of the cost overruns nor the power to stop completion of the project. See G. L. c. 109, § 19; Restatement (Second) of Agency § 84 & § 86(1) (1957). Compare *Perkins* v. *Rich*, 11 Mass. App. Ct. 317, 319-321 (1981); *Hunt* v. *Rice*, 25 Mass. App. Ct. 622, 633 (1988). Moreover, the documentary evidence shows that as soon as Reeve became aware of the fact that Kingswood was experiencing cost overruns, he made his position clear in letters to Baldwin and Sullivan: although the actual cost of construction would exceed the contract price, his

share of the profits was to be computed as if the price fixed in the construction contract had not been exceeded.[5]

We accept the judge's finding that Reeve knew that the cost of the project would exceed the contract price, but we do not defer to his conclusion that Reeve impliedly ratified Baldwin's payment of overruns to Kingswood. See *Simon* v. *Weymouth Agric. & Indus. Soc.*, 389 Mass. 146, 151 (1983). All the evidence shows that Reeve consistently insisted upon computation of his share of the anticipated profits upon the basis of the fixed cost of construction.

3. *Breach of fiduciary duty.* Based upon Reeve's complaint and his arguments on appeal,[6] any damages to which he might be entitled would be by reason of a breach of fiduciary duty owed him by Baldwin and Sullivan.[7] Although the partnership agreement immunizes the general partners from liability to each other and to Reeve, it makes exception for damages arising out of "fraud, negligence, malfeasance, breach of fiduciary duty or wilful misconduct . . . ." The questions now to be answered are whether Baldwin owed a fiduciary duty to Reeve and, if so, whether the payments to Kingswood constitute a breach of that duty.

We can think of no reason why general partners should owe their limited partners a less rigorous duty of utmost good faith and loyalty than that which general partners or stockholders in a close corporation owe one another. See

---

[5]The defendants argue that the judge was not required to credit Reeve's "self-serving" correspondence to the general partners in which he insisted upon his right to have his share of the anticipated profits computed on the basis of the fixed price set out in the contract. However, the judge did rely upon the correspondence for his finding that Reeve knew that Kingswood could not complete the project at the contract price. Moreover, as earlier noted, there is nothing before us to indicate that the general partners refuted Reeve's statements in any way notwithstanding his request for a written response should they disagree with his position.

[6]Reeve makes no argument concerning the judge's findings and conclusions under G. L. c. 93A. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[7]With regard to Sullivan's liability, it makes no difference that the payments were made by Baldwin, the managing general partner. Under the partnership agreement, a general partner's liability "shall in all respects be joint and several."

*Donahue* v. *Rodd Electrotype Co. of New England*, 367 Mass. 578, 592-594 (1975). We have recognized, "affinity of purpose between the limited partnership and the business corporation. The status of a limited partner as analogous to that of a stockholder has not gone unnoted by courts and commentators. See *Klebanow* v. *New York Produce Exch.*, 344 F.2d 294, 297 (2d Cir. 1965); *Strain* v. *Seven Hills Associates*, 75 A.D.2d 360, 365 (N.Y. 1980); Standing of Limited Partners to Sue Derivatively, 65 Colum. L. Rev. 1463, 1465 (1965)." *Partnership Equities, Inc.* v. *Marten*, 15 Mass. App. Ct. 42, 48 (1982). See also, cited in *Partnership Equities, Inc.* v. *Marten*, 15 Mass. App. Ct. at 50, *Lichtyger* v. *Franchard Corp.*, 18 N.Y.2d 528, 536-537 (1966). See generally Southgate & Glazer, Massachusetts Corporation Law and Practice §16.5[d] (1992).

There was evidence, Abbott's testimony, to show that during the negotiations concerning formation of the partnership, Reeve expressed to Baldwin his view that, in light of the facts that he was to be a limited partner and that Kingswood was the general partners' enterprise, monitoring the cost of the construction was crucial. Baldwin testified that it was he who suggested to Reeve that, in order to allay his concerns, Kingswood's contract be for a fixed price. Even if the judge did not believe Abbott's uncontroverted statements, he could not ignore Baldwin's testimony. See *Johnson* v. *Witkowski*, 30 Mass. App. Ct. 697, 710 n.19 (1991).

Reeve conveyed his land and executed the partnership agreement the same day that Baldwin and Sullivan signed the fixed-price construction contract. The defendants do not dispute the judge's conclusion that "Kingswood was obligated to build the condominiums for the fixed price it agreed upon regardless of the actual costs it incurred, unless modified either orally or by conduct." Whether Baldwin modified the fixed-price provision of the contract or whether he simply ignored it makes no difference. While it is obvious how payment of the overruns could benefit Baldwin and Sullivan as trustees of Kingswood, it is difficult to imagine how those payments furthered the interests of the limited partnership.

The suggestion that Reeve could take advantage of any losses from the venture on his income taxes does not rise to the requisite level of a demonstration of a legitimate business purpose for the partnership's payment of Kingswood's cost overruns. See *Wilkes* v. *Springside Nursing Home, Inc.*, 370 Mass. 842, 851 (1976); *Beers* v. *Tisdale*, 33 Mass. App. Ct. 621, 623-624 (1992). Compare *Leader* v. *Hycor, Inc.*, 395 Mass. 215, 222-223 (1985).

4. *Damages.* In calculating the amount of money due Reeve on so much of his complaint as sought an accounting, the judge took into consideration matters in addition to the fixed-price contract. Those matters have not been argued on appeal, and we do not consider them in amending the judgment. As to the payment of the cost overruns, the judge allowed Reeve fifteen percent of some of those payments, based upon his factual determinations whether Kingswood reasonably had incurred the overruns. It follows from what we have said in part three, *supra*, that Reeve is entitled to fifteen percent of the entire amount paid to Kingswood above the fixed price set out in the contract. Using that figure rather than the amount ($809,247) allowed by the judge, the first paragraph of the judgment must be amended to provide Reeve with $124,676, plus statutory interest from March 14, 1990.

5. *Counsel fees.* Reeve argues that because his action is derivative in nature, he is entitled to counsel fees. The evidence shows, however, that Reeve was seeking funds he claimed due for his benefit alone, and the fiduciary duty upon which our conclusion rests is a duty owed especially to him. See *Cigal* v. *Leader Dev. Corp.*, 408 Mass. 212, 219 (1990), quoting from *Bessette* v. *Bessette*, 385 Mass. 806, 809-810 (1982); *Beers* v. *Tisdale*, 33 Mass. App. Ct. at 624-625.

6. *Conclusion.* The matter is remanded to the Superior Court for amendment of the judgment in accordance with

part four of this opinion. As amended the judgment is affirmed.

*So ordered.*