**Paul MALLIA, James Bloch, Helen Boyd, James Carl, Nellie Carl, Emil Carroll, Jane Carroll, Margaret Cashman, Charles Clark, Colleen Clark, Frank Clary, Doris Foster, Harold Halsel, Bill Hamilton, Yvonne Hamilton, John Herrington, Dorothy Howard, W.D. Leonard, Ruby Leonard, Martha Ann Lockwood, Weldon Moak, William O'Brien, Sharon O'Brien, Terry Pearce, Pamela Pearce, Henry Pedigo, Alvin Penry, Virginia Penry, William Price, Marie Price, Scotty Roberts, Agnes Saucerman, Marshall Staley, and Blanche Staley**

v.

**PAINEWEBBER, INCORPORATED, PaineWebber Group, Incorporated, Pegasus Capital Corporation, Pegasus Aircraft Partners, L.P., Pegasus Aircraft Partners II, L.P., Pegasus Aircraft Management Corporation, PaineWebber Aircraft Leasing, Incorporated, and William Buchalter.**

Civ. A. No. G–95–183.

United States District Court,
S.D. Texas,
Galveston Division.

June 22, 1995.

12. Pls.' Compl. ¶ 9.

13. *Id.* ¶ 29.

14. *Id.* ¶ 30(a).

15. *Id.* ¶ 32.

16. *Id.* ¶ 33.

Jimmy Williamson, Houston, TX, for plaintiffs.

Janiece M. Longoria, Rosemarie Donnelly, Andrews & Kurth, Houston, TX, for defendants.

## ORDER DENYING MOTION TO REMAND

KENT, District Judge.

This is a potential class action suit brought by a number of Plaintiff investors against various Defendants for fraud, violations of the Texas Deceptive Trade Practices Act, and violations of the Texas Securities Act and the Texas Business and Commerce Code for the sale of units in limited partnerships sold by Defendant PaineWebber Incorporated ("PaineWebber"). This suit was originally brought in the 149th Judicial District Court of Brazoria County, Texas, and was removed to this Court on a theory of diversity jurisdiction. Before the Court now is Plaintiffs' Motion to Remand the case to state court. For the reasons stated below, the Court finds that Plaintiffs' Motion should be **DENIED.**

The Plaintiffs in this case are all purchasers of units in limited partnerships knows as Pegasus Aircraft Partners, L.P. and Pegasus Aircraft Partners, II, L.P., which were formed for the purpose of purchasing and leasing commercial aircraft. Plaintiffs allege that they purchased their units in the partnerships based on written representations made to them by PaineWebber and a variety of other Defendants, including William Bu-

chalter, a Branch Manager of the Paine-Webber office where many of the Plaintiff's purchased their partnership units. Plaintiffs allege that these Defendants developed, marketed, and conspired to sell partnership units under representations that they knew to be false and that, a result, Plaintiffs have suffered economic loss.

Plaintiffs first argue that this case should be remanded to state court because no complete diversity exists in the case and that, as a result, this Court lacks subject matter jurisdiction over it. The Court disagrees. It is undisputed that many of the Plaintiffs in this case are residents of Texas and that Defendant Buchalter is also a Texas resident. Nevertheless, Defendants removed the instant case to this Court under the theory that Buchalter had been fraudulently joined by Plaintiffs in an effort to defeat diversity jurisdiction. In response, Plaintiffs argue that Buchalter was an employee of Paine-Webber at the time the underlying events occurred and that "[h]e was behind the various policies and procedures of which Plaintiffs complain." (See Plaintiffs' Motion to Remand, at 3). Consequently, Plaintiffs argue that Buchalter was properly joined as a Defendant in this case.

 It is well settled that a court should disregard the citizenship of any Defendant whose joinder has been made primarily to defeat diversity jurisdiction. *Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181 (5th Cir.1990). Anyone claiming that a party has been joined solely to defeat the diversity jurisdiction of a court bears a heavy burden of proof: a Defendant must show that there is absolutely no possibility that the Plaintiffs will be able to establish a cause of action against the in-state Defendant in state court. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983), *cert. denied,* 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984). In evaluating this claim, this Court must view all of the Plaintiffs' state court pleadings in the light most favorable to the Plaintiffs, resolving all contested issues of substantive fact in favor of the Plaintiffs. *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981). The Court must remand the case if, after review-

ing the relevant evidence [1] submitted, and resolving any ambiguities in the controlling state law in favor of the Plaintiffs, there appears any possibility that Plaintiffs could recover against the in-state Defendants. *Carriere*, 893 F.2d at 98. The removing party at all times bears the burden of proving the alleged fraudulent joinder. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir.1992); *Yawn v. Southern Railway Co.*, 591 F.2d 312 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979).

The Court believes that PaineWebber has borne this heavy burden through a series of exceptionally well-researched and well-argued motions. Plaintiffs allege that Paine-Webber's Branch Managers conspired with the company to fraudulently misrepresent information concerning the suitability of the limited partnerships in question. Plaintiffs state that:

> The sale of these unsuitable investments through a pattern of fraudulent misrepresentation and omission was accomplished with the complicity of the PaineWebber Defendants' Branch Managers. These Managers, who shared responsibility with the PaineWebber Defendants to monitor and supervise the sale of investments such as these, actively participated in and encouraged the sale of these limited partnership units through a fraudulent scheme. The PaineWebber Defendants and their Branch managers were charged with knowledge of the sales activities of each of their retail brokers, and each and all of them knew and/or should have known of the sale of these limited partnership interests through a pattern and practice of misrepresentation and omission of material facts. Defendant Burkhalter [sic] is the Branch Manager directly responsible for sales of these investments to the named Plaintiffs. (Plaintiffs' Original Complaint, at 9).

These are the sole allegations specifically made against Defendant Buchalter in this case.

■ Unfortunately for Plaintiffs' case, however, it is uncontested that Defendant Buchalter was not a Branch Manager at the time the limited partnerships in question were sold to Plaintiffs and that he did not become a Branch Manager until February 27, 1994, more than four years after the partnership sales occurred. (Buchalter Affidavit, Defendants' Response, at 3). Until that time, Buchalter worked as a Direct Investment Sales Manager for PaineWebber in Dallas. In that capacity, he had no supervisory duties over Mr. Staley or Mr. Hall—the brokers who actually sold the partnerships at issue in this case—nor did he review the portfolios of any of the investors who are now Plaintiffs in this case. Mr. Buchalter has also testified that he had no authority to create any policies of PaineWebber in regard to the partnerships or the sales techniques employed in their sale, nor did he participate in any decision-making processes in the marketing of the partnerships. Mr. Buchalter's affidavit testimony is undisputed by Plaintiffs.

In short, the Court's thorough review of the record before it reveals *no* evidence whatsoever that Defendant Buchalter had any role to play in this matter, as Plaintiffs allege. Nor can it possibly be held that Buchalter is liable for any potential wrongdoing by PaineWebber merely by virtue of the fact that he is an agent of the company, as Plaintiffs seem to suggest. It is quite clear in Texas that, although an agent is personally responsible for his own torts, he or she cannot be liable for the alleged misdeeds of a predecessor whose job he has assumed or for the torts of his co-agents. *See K & G Oil Tool & Service Co. v. G & G Fishing Tool Service*, 158 Tex. 594, 314 S.W.2d 782, 793 (1958) (holding that a corporate officer is not personally liable for the alleged fraud of others merely because of his position if he is not personally connected to the wrongdoing); *Mayflower Investment Co. v. Stephens*, 345

---

1. In resolving such an issue, the Fifth Circuit has endorsed "a summary judgment-like procedure for disposing of fraudulent joinder claims," including the use of affidavits. *Carriere v. Sears,*

*Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

S.W.2d 786, 795 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.) (finding that a corporate agent cannot be held liable for a wrong in which he has not participated). Thus, the Court finds that there is no possibility that Plaintiffs could sustain an action against Buchalter in state court. While the Court does not suggest that Plaintiffs have actually joined Buchalter in this suit for any improper or fraudulent purpose, it does find that Buchalter is not a proper party to this action. As a result, complete diversity would seem to be present in the case.

However, Plaintiffs further argue that complete diversity is absent here because the limited partnerships, which are also Defendants in the case, must be counted as Texas residents for purposes of diversity jurisdiction under the Supreme Court's ruling in *Carden v. Arkoma*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). In *Carden*, the Supreme Court held that a limited partnership must be counted as a resident, for diversity jurisdiction purposes, of every state where each limited partner resides. The Court stated that "we reject the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members. We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members.' " *Id.* at 195, 110 S.Ct. at 1021 (quoting *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 427, 32 L.Ed. 800 (1889)). Under this ruling, it is clear that the Pegasus limited partnerships must be viewed as Texas residents because several of the Plaintiffs, who are limited partners in the Pegasus partnerships, also reside in this state.

This does not, however, end the Court's inquiry into its subject matter jurisdiction over this case. *Carden* involved the specific issue of claims brought for harms sustained by the limited partnership itself and not a direct claim by the shareholders for injuries to themselves. As discussed below, the Court does not believe that the Plaintiffs in this case have stated any derivative claims and that, as a result, the *Carden* analysis does not apply to the facts of this case. The Court's analysis in this regard cannot be guided by any binding Fifth Circuit caselaw, because the Circuit has not yet been presented with a case involving non-derivative limited partners' claims.[2] Nevertheless, the overwhelming development of judicial opinions in the post-*Carden* environment clearly indicates that courts are not willing to follow *Carden*'s directive when a Plaintiff's claims are of a direct, rather than a derivative, nature.

It is well settled that a limited partner may be able to pursue one of three types of claims against the general partners of a limited partnership for alleged breaches of fiduciary duties or other wrongdoings: the limited partner can bring an individual, direct claim; a direct claim against the general partners by means of a representative action in the form of a class action suit; or a derivative suit on behalf of the partnership itself against the general partners. *Lenz v. Associated Inns and Restaurants Company of America*, 833 F.Supp. 362, 378 (S.D.N.Y. 1993); *see also Curley v. Brignoli, Curley & Roberts Associates*, 915 F.2d 81 (2d Cir. 1990), *cert. denied*, 499 U.S. 955, 111 S.Ct. 1430, 113 L.Ed.2d 484 (1991); *Klebanow v. New York Produce Exchange*, 344 F.2d 294 (2d Cir.1965); *Fulton v. Baxter*, 596 P.2d 540 (Okla.1979).

Courts facing limited partners' claims after *Carden* have been quite specific in stating that the nature of the claims Plaintiffs bring determines whether or not a partnership's

**2.** Nevertheless, several comments by the Fifth Circuit strongly suggest that it will follow other courts in making this distinction. For example, in *Bankston v. Burch*, 27 F.3d 164, 165 (5th Cir.1994), the Circuit followed *Carden* by specifying that the facts before it were specifically limited to derivative claims:

> The general partner of a limited partnership appeals from the district court's judgment in a derivative lawsuit brought by a limited partner.

> *Because the claims the limited partner pleaded derived from the partnership's rights, the partnership's citizenship must be considered in determining whether federal diversity jurisdiction exists.* (emphasis added).

Implicit in the Circuit's holding in *Bankston* is the implication that had the limited partner's claims been direct, rather than derivative, the partnership's citizenship would have been viewed differently.

presence in the suit is necessary or not and, by consequence, whether its citizenship must be taken into consideration for diversity purposes:

> The nature of a limited partner's suit is critical to any analysis of subject matter jurisdiction under *Carden*. Simply put, in a derivative action brought by a limited partner, a limited partnership is an indispensable party.
>
> . . . .
>
> By contrast, in a direct individual or representative action brought by a limited partner against general partners, the limited partnership itself may be dropped from the action or disregarded for diversity purposes.

*Lenz,* 833 F.Supp. at 378–79; *see also Buckley v. Control Data Corp.,* 923 F.2d 96, 98 (8th Cir.1991) (holding that "[w]hether the claims asserted by [the limited partners] are direct or derivative bears not only on the merits of their claims, but also on whether we may dismiss the partnership so as to cure the jurisdictional defect.").

■ This Court's reading of the relevant caselaw after *Carden* strongly suggests that when a Plaintiff's claims are direct in nature—particularly when they are brought, as here, as a class action—the limited partnership will not be considered an indispensable party under Fed.R.Civ.P. 19, and will not be included in a court's analysis of diversity jurisdiction. For example, in *Delta Fin. Corp. v. Paul D. Comanduras & Assoc.,* 973 F.2d 301, 303 (4th Cir.1992), the Fourth Circuit analyzed a limited partner's suit against a general partner Defendant who answered that the limited partnership should be joined as a party, thus destroying diversity jurisdiction under *Carden.* The court relied on *Curley,* 915 F.2d at 81, to reject this contention, and it applied Rule 19 to exclude the partnership from the litigation and to sustain diversity jurisdiction. The court stated that "[e]ven if the partnership entity may under some circumstances be a necessary or indispensable party to litigation involving the constituent partners, which we do not suggest, we are of the opinion that [the limited partnership] is not necessary or indispensable to the instant dispute." *See Curley,* 915 F.2d at

85–87 (finding that when a Plaintiff's claims are direct or class action-type claims, they do not require the partnership's joinder or the application of *Carden*); *see also Shlomchik v. Richmond 103 Equities Co.,* 763 F.Supp. 732, 740 (S.D.N.Y.1991) (stating that, based on *Carden* and *Curley,* "recharacterization of the derivative action as a class action and dropping [the limited partnership] as a party-defendant would be appropriate"); *Lenz,* 833 F.Supp. at 378–79 (finding that under *Carden,* "in a derivative action brought by a limited partner, the limited partnership is an indispensable party," but in a direct or class action, "the limited partnership itself may be dropped . . . or disregarded for diversity purposes.").

■ In this case, the Court has no hesitation in classifying Plaintiffs' suit as a claim for a direct injury sustained by the limited partners themselves. The test to distinguish between derivative claims and direct/class action claims is well-defined. "In a derivative suit, a shareholder [or limited partner] sues on behalf of the corporation [or partnership] for harm done to the corporation [or partnership]." *Lenz,* 833 F.Supp. at 380. By contrast, a Plaintiff bringing an individual, direct action "must be injured directly or independently of the corporation [or partnership]. . . . Similarly, to bring a direct representative action against a general partner, a limited partner must demonstrate either direct injury or an injury that exists independently of the partnerships." *Id.; see also Kenworthy v. Hargrove,* 855 F.Supp. 101, 106 (E.D.Pa.1994) (explaining that the determination hinges on "whether the primary injury alleged in the complaint is to the partnership or to the individual plaintiffs."). Thus, when a limited partner alleges wrongs to the limited partnership that indirectly damaged a limited partner by rendering his or her interest in the partnership of lesser value, the partner is required to bring the claim derivatively. *Id.*

■ In this case, it is clear that Plaintiffs do *not* seek any relief for injury allegedly suffered by the partnerships themselves. Rather, the Original Complaint consistently alleges that the partnerships were unsuitable investment vehicles for the Plaintiffs and

that Plaintiffs' decisions to invest in the partnerships were improperly induced by fraudulent statements, negligent misrepresentations, or combinations of both. Thus, Plaintiffs focus exclusively on the allegedly deceptive manner in which they were induced to purchase units in the partnerships and *not* on any harm done to the partnerships themselves. Not surprisingly, therefore, Plaintiffs have requested that their case be "certified as a class action, with Plaintiff Mallia serving as class representative." (Plaintiffs' Original Complaint, at 9).

Because of the direct nature of Plaintiffs claims, the Court further finds that the limited partnerships are merely nominal, rather than indispensable, parties to this suit under Fed.R.Civ.P. 19. The first Rule 19(b) consideration—the extent to which a judgment rendered in the partnerships' absence might be prejudicial to the partnerships or others in the lawsuit—presents no impediment in this regard. Because Plaintiffs do not assert derivative claims, the suit involves no alleged injury suffered by the partnerships. Further, the culpable acts that the Complaint alleges, which relate exclusively to the marketing of the partnerships' units, could under no circumstances have been performed by the partnerships themselves. A limited partnership can act only through its general partners, and they, along with the other sales agents for these partnerships, will remain in this case. Thus, finding that the partnerships are merely nominal parties would prejudice no other party in this suit. As a practical matter, Plaintiffs, who are the owners of the partnerships, would hardly want to collect any judgment they might collect in this suit from the partnerships' assets.

Similarly, finding that the partnerships are merely nominal parties does not make any judgment in this case inadequate. As indicated above, Plaintiffs cannot realistically be said to be looking to the partnerships themselves as deep pockets from which to satisfy any judgment, for that would in large measure be to recover from their own assets. Indeed, Plaintiffs do not allege that the partnerships themselves have acted improperly at all. Instead, the Original Complaint is framed exclusively in terms of fraudulent inducements on the part of those Defendants who marketed and sold the partnership investments. Since the Plaintiffs are obviously looking to the non-partnership parties as the solvent entities from which to satisfy any judgment, the adequacy of Plaintiffs' remedy is not affected by finding that the partnerships are merely nominal parties in this case whose citizenship should be ignored for diversity purposes.

For these reasons, the Court finds that the partnerships are nominal parties to this case and that, although they are residents of Texas under *Carden*, the Court is not divested of diversity jurisdiction over this case for that reason. The Plaintiffs' Motion to Remand is therefore **DENIED**. Each party is to bear his or its own taxable costs in this matter. Moreover, the Court has been made aware through the pleadings filed in this matter that a class action suit has been filed prior to the instant case in the Southern District of New York that deals with a variety of Paine-Webber limited partnerships, including those sued in this case. *In re PaineWebber Incorporated Limited Partnership Litigation*, Case No. 94–CV–8547. Defendants have alleged that this prior suit subsumes Plaintiffs' complaints of misrepresentation and fraud in connection with the sale of the Pegasus Partnership Units. It appears to the Court that, if this is true, judicial economy and fairness would be highly served by the transfer of this case to the Southern District of New York for consolidation with this ongoing litigation. Although courts may transfer cases *sua sponte*, *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir.1989), in this case the Court believes that Due Process concerns suggest that the parties should receive notice of the Court's intention, which is here tendered, and have an opportunity to respond in an appropriate manner. The Court therefore *sua sponte* **ORDERS** that all parties in the instant case desiring to file briefs with the Court should do so no later than the close of business on July 28, 1995, on the suitability of the transfer of this case to the Southern District of New York. The Court also encourages Defendants, should they so wish, to file a Motion to Dismiss Defendant Buchalter from this suit. Plaintiffs shall have twenty days in which to respond to any

·such Motion, according to the Local Rules. It is further **ORDERED** that the parties file no further pleadings on the issue decided today, including motions to reconsider and the like. Instead, the parties are instructed to seek whatever relief they feel themselves entitled in the appropriate United States Court of Appeals, as may be appropriate in due course.

**IT IS SO ORDERED.**