Arthur BLASBERG, Jr., as Successor Trustee, and As the Sole Limited Partner of North Tonawanda Cogeneration Facility Limited Partnership, Plaintiff,

v.

OXBOW POWER CORPORATION and Oxbow Power of North Tonawanda, New York, Inc., Individually, and in its Capacity as Sole General Partner of North Tonawanda Cogeneration Facility Limited Partnership, Defendants,

and

North Tonawanda Cogeneration Facility Limited Partnership, Nominal Defendant.

Civil Action No. 94–12387–REK.

United States District Court, D. Massachusetts.

July 17, 1996.

**22**

Harry L. Manion, III, Cooley, Manion, Moore & Jones, P.C., Boston, MA, for Arthur Blasberg, Jr.

Mitchell H. Kaplan, Choate, Hall & Stewart, Boston, MA, for Oxbow Power Corporation, Oxbow Power of North Tonawanda, New York Inc., North Tonawanda Cogeneration Facility Limited Partnership.

**MEMORANDUM AND ORDER**

KEETON, District Judge.

Pending before this court is plaintiff's Renewed Motion to Remand (Docket No. 17, filed December 12, 1995). Plaintiff also filed a Memorandum in Support of Remand (Docket No. 18, filed December 12, 1995), an Affidavit of Page D. Miller (Docket No. 19, filed December 12, 1995) and an Affidavit of

John R. Martin (Docket No. 20, filed December 12, 1995).

Defendants responded to plaintiff's Motion and filed a Memorandum of Law in Opposition to Plaintiff's Motion to Remand (Docket No. 22, filed January 12, 1996). Plaintiff, in turn, replied to defendants' opposition and filed a Reply Re: Renewed Motion to Remand (Docket No. 24, filed February 7, 1996).

**I.**

Plaintiff, Arthur Blasberg, Jr. is a Massachusetts resident and the successor trustee of a trust (the "Trust") established to liquidate the assets of Wormser Engineering, Inc. ("Wormser"). The Trust's purpose was to distribute the proceeds from the liquidation for the benefit of Wormser's creditors.

Defendants Oxbow Power of North Tonawanda, New York, Inc. ("Oxbow") and Oxbow Power Corporation ("OPC") are both Delaware Corporations whose principal places of business are in West Palm Beach, Florida.

The "Nominal Defendant," North Tonawanda Cogeneration Facility Limited Partnership (the "Partnership"), is a Limited Partnership created by an agreement between the Trust and Oxbow (the "Partnership Agreement"). The Trust is the sole limited partner and Oxbow is the sole general partner of the Partnership.

This case was first filed in Massachusetts Suffolk County Superior Court as Civil Action No. 94–6032 on November 7, 1994. Defendants removed the case to this court on December 2, 1994 contending that there was and is complete diversity of citizenship among the parties as to all claims and asserting jurisdiction under 28 U.S.C. §§ 1332 and 1441(a).

On December 19, 1994 plaintiff filed a Motion to Remand (Docket No. 3). Defendants opposed plaintiff's motion with a Memorandum in Opposition (Docket No. 5, filed December 30, 1994). This court heard the parties on plaintiff's Motion to Remand on March 2, 1995, and denied the motion without prejudice. The court stated that it did not have an adequate factual record of ad-

missible evidence to determine whether plaintiff had asserted a derivative claim on behalf of the Partnership sufficient to defeat jurisdiction. (*See,* Court Notes of March 2, 1995, Docket No. 14).

The record then before the court did not show an objectively reasonable basis, after good faith inquiry, for plaintiff's characterization of the claim. The record, therefore, was insufficient for the court to make a determination that plaintiff's characterization of the claim as derivative was not just labeling designed to defeat jurisdiction. For that reason plaintiff's motion was denied without prejudice. Plaintiff was specifically invited to renew its Motion at a later date should it be able, after investigation and discovery, to produce admissible factual support showing that its derivative claim was not "a sham" to defeat defendants' effort to assert diversity jurisdiction in this court.

Plaintiff now renews its Motion to Remand asserting that, through discovery, it has come into possession of evidence sufficient to establish a good faith and reasonable basis for its derivative claim against Oxbow. Plaintiff characterizes its allegations found in Count VII and ¶ 27 of Part II of the Verified Complaint as stating a derivative claim.

In Count VII, plaintiff asserts that Oxbow, as General Partner, had fiduciary obligations both (a) to its sole Limited Partner, the Trust, and (b) to the Partnership. Plaintiff asserts that Count VII includes a derivative claim (on behalf of the Partnership) even if it also includes a claim by plaintiff as Limited Partner for the breach of the duty to the Limited Partner.

## II.

A United States district court has original jurisdiction over civil actions between parties of different states where the amount in controversy is greater than $50,000.00. 28 U.S.C. § 1332. A defendant who so desires may remove to federal court any case filed in state court over which the federal district court has original jurisdiction. 28 U.S.C. § 1441(a). If plaintiff believes that removal was improper, plaintiff may file a motion to remand the case to state court. 28 U.S.C. § 1447.

■ If a complaint includes some claims within § 1332 jurisdiction, and others not within § 1332 jurisdiction, the case is not removable. The lack of complete diversity on any one claim defeats § 1332 jurisdiction over the entire case.

The rule stated in the preceding paragraph is in contrast with the rule established for 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1441(c), under which "the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." Neither party contends that this case involves a federal question. Thus, under 28 U.S.C. §§ 1332, 1441, and 1447, for this court to retain jurisdiction, complete diversity of citizenship among opposing parties must be shown as to every claim alleged in the complaint.

■ In a derivative action the party on whose behalf a suit is brought (the party through which the claim derives) is indispensable. Its citizenship is therefore considered for the purpose of determining whether complete diversity exists. *Ross v. Bernhard,* 396 U.S. 531, 538–539, 90 S.Ct. 733, 738–39, 24 L.Ed.2d 729 (1970); *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 522–523, 67 S.Ct. 828, 830–31, 91 L.Ed. 1067 (1947).

■ In determining citizenship of a corporation, a court must treat the corporation as a citizen of the state under whose laws it was formed, as well as a citizen of "the state where it has its principal place of business. . . ." 28 U.S.C. § 1332(c)(1) (with an exception not applicable here). Under the Supreme Court's holding in *C.T. Carden v. Arkoma Associates,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990), a limited partnership is not like a corporation in this respect. A limited partnership is not a citizen of the state under whose laws it was created; rather, its citizenship includes the citizenship of each of its partners, both general and limited. *Carden,* 494 U.S. at 195–196, 110 S.Ct. at 1021–22. Thus, if plaintiff, as a Limited Partner, has alleged a derivative

claim that can survive initial screening, no diversity jurisdiction exists.

The issue before this court is therefore whether plaintiff has alleged a true derivative claim on behalf of the Partnership or instead, as defendants contend, plaintiff has alleged only a claim that is properly characterized as a direct one by the Limited Partner against the General Partner.

### III.

Defendants present some mutually inconsistent arguments. I conclude however, that they are permitted to argue in the alternative in this way, and I must consider each argument on its merits. In summary, I understand defendants' arguments to be:

1) since plaintiff has not amended its Complaint, nothing has changed since plaintiff's first Motion to Remand, and the court's order today should therefore be the same as its order of March 2, 1995;

2) plaintiff's Renewed Motion to Remand is, in essence, based on a new allegation, not included in the Complaint, which allegation cannot be considered when deciding the present Motion to Remand;

3) the rights and benefits that plaintiff seeks to enforce run directly and exclusively to the Trust as Limited Partner rather than to the Partnership, and thus the claim is a direct rather than a derivative claim;

4) even if plaintiff has a derivative claim, plaintiff has failed to allege (or show) that the procedural prerequisites for a derivative claim have been satisfied; and

5) the Partnership, called "Nominal Defendant," is in fact a "sham defendant" brought into the suit for the sole purpose of defeating this court's diversity jurisdiction.

In Count VII of its Verified Complaint, which plaintiff contends either states what it characterizes as its derivative claim, or at least includes its derivative claim, is in relevant part as follows:

52. Oxbow has breached its fiduciary *duty to the Trust* in several ways, including, but not necessarily limited to, the following:

. . . . .

c) its payment of excessive amounts of affiliated party transactions to the *detriment of the Partnership and the Trust,* as its sole limited partner.

53. As a direct and proximate result of Oxbow's breach of its fiduciary duty, the Trust (*and in the case of the excessive affiliated party transactions, the Partnership*) has suffered and will continue to suffer severe economic harm.

WHEREFORE, the plaintiff prays that this Court:

1. Award the plaintiff monetary damages in an amount sufficient *to compensate the Partnership for its losses* resulting from Oxbow's breach; ...

(Verified Complaint at 28) (emphasis added).

Plaintiff also points to paragraph (27) of its complaint to show that it alleged a derivative claim. That paragraph, in pertinent part states:

Upon information and belief, the sole owner of the affiliated parties in question is the same individual, Koch, who is the sole shareholder of the S corporation which is the General Partner. Notwithstanding the language of section 3.03(g) [of the Partnership Agreement], the implied covenant of good faith and fair dealing, along with the fiduciary duty of the utmost good faith, loyalty and fair dealing *owed to the Trust* by Oxbow, [and] public policy principles of good faith and fair dealing dictate that all affiliated party transactions *with the Partnership* be subject to the arm's length rule. Failure to do so would serve only to reward Oxbow for inefficiency, overreaching and taking unfair advantage for its own benefit *at the expense of the Partnership and the Trust.*

(Verified Complaint at 16–17) (emphasis added).

In support of its allegations, after some discovery, plaintiff has supplied the court with affidavits from two proffered experts, Page D. Miller, and John R. Martin, P.E., who reviewed a portion of Oxbow's financial documents for the period of January 1, 1994, through November 30, 1994. These affiants both state that, in their opinions, the

amounts charged to the Partnership by Oxbow affiliates for general and administrative expenses are grossly excessive and commercially unreasonable when compared with charges customarily incurred by similar power projects.

Defendants first argue that the court must look only to the complaint for facts supporting plaintiff's assertion that it has alleged a derivative claim. They argue that, since plaintiff has not amended its complaint, there is nothing new for this court to consider in its jurisdictional inquiry. At the motion hearing of March 2, 1995, however, this court explicitly stated that it needed a further factual basis, supported by admissible evidence, (which might include evidence becoming available through discovery), to determine whether or not plaintiff's contention that it had alleged a derivative claim was "a sham." Plaintiff has now submitted affidavits that it contends provide support for its contention. Having explicitly invited a proffer of admissible evidence in support of plaintiff's efforts to show that it had alleged a derivative claim, this court will consider plaintiff's affidavits when addressing the Renewed Motion to Remand.

Defendants' second argument is that plaintiff's Renewed Motion and Affidavits supporting the Motion amount to new allegations not contained in the original complaint and cannot, therefore, be considered when deciding the issue of Remand. Defendants argue that plaintiff's original complaint alleged only payment of excessive monies to Oxbow affiliates from 1991–1993, a time when the Partnership did not exist. Plaintiff's new submissions, defendants contend, raise an entirely new allegation of excessive payments to affiliated parties for the first eleven months of 1994, a time period after which the Partnership was in effect. Indeed, defendants contend that the Affidavits submitted by plaintiffs "relate, in part to transactions actually occurring after the Complaint was filed and to financial information available almost wholly after filing." (Defendants' Opposition, Docket No. 12 at 12). Defendants contend, therefore, that the affidavits cannot cure deficiencies in plaintiff's allegations in the Complaint, on which plaintiff still wishes to proceed.

I conclude that defendants' argument is not supportable. Plaintiff's complaint is divided into two parts. Part II addresses the time period after the Partnership was in effect, from April 1, 1993 to the present, and contains Paragraph (27). Paragraph (27) of the Complaint, quoted above, though ambiguously phrased, alleges that Oxbow, to its benefit and at the expense of the Partnership and the Trust, has failed to perform transactions with its affiliates in conformance with the "arm's length rule." The so-called "arm's length rule" requires that contracts with affiliates "shall be on terms which are no more favorable to such Affiliates than comparable transactions between unaffiliated parties negotiated on an arm's length basis." (Plaintiff's Exhibit A, attached to the Complaint, Agreement of Limited Partnership at 7). In essence plaintiff's allege that the General Partner's more favorable treatment of its affiliates in certain transactions amounts to breach of a fiduciary duty of the General Partner, without being precise about whether the duty is to the Limited Partner, to the Partnership, or to both.

It is true that paragraph (27) does not detail specific excessive amounts allegedly paid to Oxbow affiliates as the paragraphs alleging overpayment during 1991–1993 do. As defendants concede, however, most of the financial information was not available to plaintiff until after the filing of the Complaint. In addition, the affiants statements as to the excessive nature of the General Partner's payments to its affiliates supports a claim that the affiliates received extremely favorable treatment that may have been at the expense of the Partnership. Finally, the transactions evaluated by the affiants occurred between January 1, 1994, and November 30, 1994. The Complaint was filed on November 12, 1994. Thus, contrary to defendants' assertion, the affidavits address transactions occurring before the filing of the Complaint, though also a bit beyond that date. The proffered statements can properly be considered in explanation of the ambiguous allegations of the Complaint.

■ Defendants' third argument is that plaintiff's claim for excessive payments to affiliated parties is a direct rather than a derivative one, and that the Partnership therefore is neither a necessary party to the action nor countable for determining diversity among the parties.

■ Some support in precedent exists for the proposition that a limited partner may bring any of three claims against the general partner of a limited partnership. "[T]he limited partner can bring an individual, direct claim; a direct claim . . . in the form of a class action suit; or a derivative suit on behalf of the partnership itself. . . ." *Mallia v. PaineWebber Inc.*, 889 F.Supp. 277, 281 (S.D.Tex.1995) (citations omitted). *See also, Lenz v. Associated Inns & Restaurants Co. of America*, 833 F.Supp. 362, 378 (S.D.N.Y. 1993). When deciding under which of these categories a plaintiff's claim properly falls, a court must analyze the source of the plaintiff's claim.

> [W]hat differentiates a direct from a derivative suit is neither the nature of the damages that result from the defendant's alleged conduct, nor the identity of the party who sustained the brunt of the damages, but rather the source of the claim of right itself. If the right flows from the breach of a duty owed by the defendants to the corporation, the harm to the investor flows through the corporation, and a suit brought by the shareholder to redress the harm is one "derivative" of the right retained by the corporation. If the right flows from the breach of a duty owed directly to the plaintiff independent of the plaintiff's status as a shareholder, investor, or creditor of the corporation, the suit is direct.

*Branch v. Ernst & Young*, No. 93–10024–RGS, 1995 WL 791941 at *4 (D.Mass. Dec. 22, 1995).

■ For example, if a plaintiff alleges mismanagement of funds, embezzlement or breach of fiduciary duty resulting in a diminution of the value of the corporate stock or assets, the claim is one held by the corporation itself, and is thus derivative if brought by an investor. The plaintiff's injury would accrue due to his role as investor in the corporation, in the form of a loss in investment value. In such a case, however, the corporation sustains an injury and has a right of claim. Indeed, any judgment on such a claim would be paid to the corporation so that the corporation's financial status would be restored. *See, e.g., Vincel v. White Motor Corporation*, 521 F.2d 1113, 1118–1119 (2d Cir.1975); and *Papilsky v. Berndt*, 466 F.2d 251, 255 (2d Cir.1972), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972).

■ In contrast, if a plaintiff alleges that she, as an individual investor, was misled or defrauded in the purchase of her investment, this kind of claim is a "direct" one. That many investors might have been misled, as the plaintiff was, or that the plaintiff might only be minimally injured, does not convert the claim to a derivative one. The claim remains a direct one for wrongs to individual investors rather than to the corporate entity. Payment on such a claim would be made not to the corporate entity but to the plaintiff-investors in order to compensate them for their individual losses. *See, e.g., Chesbrough v. Woodworth*, 244 U.S. 72, 37 S.Ct. 579, 61 L.Ed. 1000 (1917).

I conclude, on the basis of the authority now available, that the same principles hold true in the partnership context. *See, Fulco v. Continental Cablevision, Inc.*, No. 89–1342 S, 1990 WL 120689 at *4 (D.Mass. June 19, 1990) ("the distinction [between a derivative and direct action] lies in whether the obligation is owed primarily to the partnership or to the other partners individually"), as do principles of corporate fiduciary responsibility. *Wartski v. Bedford*, 926 F.2d 11, 13 (1st Cir.1991) ("It is well settled that partners owe each other a fiduciary duty of the utmost good faith and loyalty." (citations and internal quotation marks omitted)).

■ When bringing a direct action against a general partner, a limited partner must show both that the right to recover for the alleged breach belongs to it, rather than the partnership, and that it sustained injury. *Dowling v. Narragansett Capital Corp.*, 735 F.Supp. 1105, 1113 (D.R.I.1990); and *Lenz*, 833 F.Supp. at 380. Conversely, as to a

derivative action, it is the partnership that must have the right to recovery and must sustain the injury alleged. When a partnership sustains an injury the limited partners may also suffer from this injury; this kind of injury, however, will be in the form of diminution of the value of the limited partners' proportionate interest in the partnership. *Fulco,* No. 89–1342 S, 1990 WL 120689 at *4; *Dowling* 735 F.Supp. at 1113; *Lenz* 833 F.Supp. at 380–381; *See also Bessette v. Bessette,* 385 Mass. 806, 434 N.E.2d 206, 208 (1982).

■ As noted above, general partners owe their limited partners a duty of "utmost good faith and loyalty," analogous to the duty that general partners in a close corporation hold to each other. *Wartski v. Bedford,* 926 F.2d 11, 13 (1st Cir.1991); *Cardullo v. Landau,* 329 Mass. 5, 105 N.E.2d 843, 845 (1952). A general partner is not permitted to act, without full disclosure, in its own self-interest at the expense of the partnership or other partners. *Wartski,* 926 F.2d at 14.

Derivative actions by limited partners on behalf of partnerships have been approved as an appropriate remedy for redress of improper acts by general partners in certain instances. The court in *Abeloff v. Barth,* 119 F.R.D. 332, 334 (D.Mass.1988), for example, held that, among others, limited partners' claims against their general partners for breach of fiduciary duty for "payment of unreasonable management and other fees to affiliates" belonged to the partnership entities rather than the limited partners, and were thus derivative. *See also Bessette v. Bessette,* 385 Mass. 806, 434 N.E.2d 206, 208 (1982) (holding, in the corporate context, that claims by minority stockholders for payment of excessive salaries must be brought derivatively because the right to recovery of excess funds lies with the corporation); and *Partnership Equities, Inc. v. Marten,* 15 Mass. App.Ct. 42, 443 N.E.2d 134, 138–139 (1982) (holding that claims against general partners for such actions as diversion of assets, mismanagement, and failure to perform elements of the partnership agreement are properly brought as derivative claims).

Defendants argue that, regardless of the foregoing precedents, *Reeve v. Folly Hill Limited Partnership,* 36 Mass.App.Ct. 90, 628 N.E.2d 36 (1994), is dispositive. I conclude that I need not decide whether *Reeve* is inconsistent with other Massachusetts precedent. In any event *Reeve* is distinguishable from the present case.

In *Reeve* the court held that the claim before the court, brought by a limited partner against its general partner, was not derivative in nature. The general partner in *Reeve* paid large cost overruns to a building contractor involved in the partnership's real estate development project. These payments were made even though the partnership held a fixed-cost construction contract with the contractor. When the cost overruns were deducted from the plaintiff-limited partner's final distributions, lowering his profits, plaintiff brought suit for breach of fiduciary duty to recover the difference. Thus, the claim in *Reeve* was for distributions owed directly to the limited partner upon completion of a real estate development project. It was in this context that the court held that the limited partner's claim was direct rather than derivative.

The claim in the present case, however, unlike *Reeve,* is not for money payable to plaintiff as a distribution to an investor. Plaintiff's complaint in Count VII specifically alleges a breach of the General Partner's fiduciary duty for excessive payments to affiliated entities. Plaintiff's ¶ 27, addressing the time period after the Partnership came into existence, also alleges that the General Partner committed a breach of its fiduciary duty by entering into transactions with affiliated entities extremely favorable to those affiliates. Both of these actions, plaintiff alleges, resulted in harm to the Partnership as well as the Trust.

Plaintiff's Affidavit testimony states that payouts to affiliated entities made by the defendant, on behalf of the Partnership, were commercially unreasonable. Specifically, in Mr. Martin's opinion, "it is inconceivable that over one half million dollars for home office employees and overhead was necessary to support the project." (Affidavit of John R. Martin, ¶ 9).

Together, plaintiff's allegations and submissions state a claim for breach of fiduciary duty to the Partnership resulting in injury to the Partnership. In contrast to *Reeve,* the injury in this case is a diminution of the value of the assets of the Partnership due to excessive payouts to third parties, rather than a diminution of the value of distributions to the Limited Partner as an investor. Any potential recovery on this claim would appropriately be ordered payable to *the Partnership,* not to plaintiff individually as Trustee or Limited Partner.

I conclude that plaintiff's Count VII and ¶ 27 include a derivative claim, "the gravamen" of which "is injury to the corporation, or the whole body of its ... property without any severance or distribution among individual holders." *Von Brimer v. Whirlpool Corporation,* 367 F.Supp. 740 (N.D.Ca.1973) (citations and internal quotation marks omitted).

 Defendants, as I interpret their submission, make an additional argument that because there is only one limited partner, the plaintiff, any claim plaintiff makes on behalf of the Partnership is of direct benefit to the plaintiff and therefore transforms its claim from a derivative to a direct action. Defendants provide no legal support for this argument, and I find none in my review of the law. Indeed, if we look again to corporate law for analogy, we find that the rule invoked (that fiduciary obligations of corporate officers and directors are enforced by the corporation) is a rule that "is applicable even where the individual is the sole stockholder." *Cole v. Ford Motor Co.,* 566 F.Supp. 558, 569 (W.D.Pa.1983). *See also Schaffer v. Universal Rundle Corp.,* 397 F.2d 893, 896 (5th Cir.1968). In addition, defendants' argument ignores the existence of the Partnership as an independent legal entity that retains its own rights, obligations and property, only a proportion of which, upon dissolution or by distribution, may belong to the limited partners.

I conclude that plaintiff has stated a derivative claim against the General Partner by seeking to enforce rights of the Partnership entity. I further conclude that the "Nominal Defendant," the Partnership, is not, as defendants' contend, "a sham" defendant improperly named to defeat defendants' removal effort.

## IV.

Having concluded that plaintiff's claim is derivative, under the *Carden* decision, I conclude also that complete diversity among the parties cannot be shown as long as the derivative claim is a part of this civil action. This court therefore did not have diversity jurisdiction over this case when it was filed or when it was removed, and does not have diversity jurisdiction at the present time. Without jurisdiction, this court has no authority to reach a determination as to whether actions or inactions of a party might have a bearing on whether the court should retain jurisdiction, on grounds raised in defendants' final argument, regarding plaintiff's noncompliance with the procedural prerequisites to filing a derivative suit under Massachusetts General Laws.

This court's decision to remand is without prejudice to any action the state court may decide it should take as to plaintiff's alleged noncompliance with procedural prerequisites to a derivative suit under Massachusetts General Laws. I do not reach those issues. Nor do I reach issues regarding removability of the case should it happen, after remand, that the state court dismisses the only claim or claims as to which complete diversity cannot be shown.

## ORDER

For the reasons stated in the foregoing Memorandum and Order, it is hereby ORDERED:

1) Plaintiff's Motion to Remand (Docket No. 17, filed December 12, 1995) is ALLOWED.

2) The Clerk is directed to enter, on a separate document, a Final Order as follows:

This case is remanded to the court from which it was removed.

3) The Clerk will include in the record transmitted to the state court a copy of this

Memorandum and Order and the Final Order entered separately.